UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD WINGO, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00726-SNLJ |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

On July 7, 2022, Petitioner Edward Wingo, Jr. ("Wingo") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. This Court then ordered the United States to show cause why the relief requested in Wingo's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Wingo's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

**I.    BACKGROUND**

On September 26, 2019, an Indictment was filed in cause no. 4:19-cr-00806-SNLJ ("Crim. Case"), charging Wingo with one count of violating Title 18, United States Code, Section 922(g)(1) and alleging that, on or about August 19, 2019, Wingo possessed a firearm knowing that he had previously been convicted of one or more crimes punishable

by a term of imprisonment exceeding one year. Crim. Case, Doc. 1.[1] Following his arrest in cause no. 4:19-CR-00806-SNLJ, the Hon. Nanette A. Baker ordered that Wingo be detained pending disposition of the criminal case. Crim. Case, Doc. 24. On July 8, 2021, Wingo pled guilty to the charge in the Indictment. Crim. Case, Doc. 64. Wingo admitted that, on August 19, 2019, he had outstanding warrants for his arrest and was wanted pursuant to a recent report of domestic violence and sexual assault. Crim. Case, Doc. 65, at p. 3. Wingo further admitted that on that same date he was in possession of a black .380 Ruger LCP semi-automatic pistol. Crim. Case, Doc. 65, at p. 4. On July 8, 2021, this Court sentenced Wingo to 37 months in prison to be followed by 3 years of supervised release. Crim. Case, Doc. 68. Wingo was delivered to the Bureau of Prisons ("BOP") Federal Correctional Institution Greenville on July 29, 2021. Crim. Case, Doc. 70. Wingo was released from the BOP on May 23, 2022, and he commenced his term of supervised release. Crim. Case, Doc. 76. His supervised release is expected to expire on May 22, 2025. Crim. Case, Doc. 76.

Prior to entering his guilty plea, Wingo filed a Motion to Suppress Evidence and Statements on July 15, 2020. Crim. Case, Doc. 32. The Government's response to Wingo's Motion to Suppress Evidence and Statements was due on July 27, 2020. Crim. Case, Doc. 33. On July 28, 2020, the Government filed its memorandum in opposition to Wingo's motion to suppress accompanied by a motion for leave to file such memorandum out of time. Crim. Case, Doc. 34 and Doc. 33. Wingo neither objected nor consented to the

---

[1] In 1998, Wingo was convicted of Murder in the 1st Degree in the Circuit Court for Madison, Illinois, in cause no. 97-CF-1388. Crim. Case, Doc. 60, at p. 6. In 2012, Wingo was convicted of being a Felon in Possession of a Firearm in the United States District Court for the Southern District of Illinois in cause no. 3:11-cr-30208. *Id*. at p. 8.

2

Government's motion for leave to file its memorandum out of time. By docket order on July 29, 2020, the Hon. David D. Noce grated the Government's motion for leave to file the memorandum out of time. Crim. Case, Doc. 35. An evidentiary hearing on Wingo's motion to suppress was held on September 25, 2020. Crim. Case, Doc. 38. After receiving further briefing from both parties, Judge Noce issued his Order and Recommendation on January 15, 2021. Crim. Case, Doc. 47. On January 29, 2021, Wingo objected to the report and recommendation of Judge Noce. Crim. Case, Doc. 48. On February 8, 2021, this Court adopted the report and recommendation of Judge Noce and denied Wingo's motion to suppress. Crim. Case, Doc. 49). On June 28, 2021, the case was set for a combined plea and sentencing hearing to occur on July 8, 2021. Crim. Case, Doc. 58.

## II.   LEGAL STANDARD

In general, to state a claim for relief under Title 28, United States Code, Section 2255, a petitioner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing court did not have jurisdiction to impose the sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424 (1962). The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction. *United States v. Skinner*, 326 F.2d 594, 597 (8th Cir. 1964). Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Instead, a Section 2255 cause of action is intended only to correct an error which rises to the level of a "fundamental

3

defect" which "inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 427.

### A. Claims of Ineffective Assistance of Counsel

Petitioner Wingo's request for relief under Title 28, United States Code, Section 2255 rests solely on claims of ineffective assistance of counsel. Doc. 1. The standard that must be met to show ineffective assistance of counsel sets a high bar, *e.g.*, *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020), and "is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted). Errors alone do not meet the ineffective-assistance standard because the Sixth Amendment "does not require perfect trial performance; it requires only competence." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995). Courts have explained that the ineffective-assistance standard is "a most deferential one" that must be applied "with scrupulous care." *Harrington*, 562 U.S. at 105. It is "all too tempting to second-guess counsel's assistance after conviction or adverse sentence." *Id*. (internal quotation marks and citation omitted). Nevertheless, the question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To establish an ineffective-assistance claim, defendant must prove two separate prongs, often referred to as the *Strickland* test. Failure to establish either component—deficient performance or prejudice—is fatal to a claim of ineffective assistance. *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (citing *Strickland*, 466 U.S. at 697). Courts do not have to evaluate both prongs of the *Strickland* test if defendant

4

fails to establish one. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

### 1. Performance Prong

First, Petitioner Wingo must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Love*, 949 F.3d at 410. "An attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013). Instead, the reasonableness of counsel's conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

Furthermore, the test of whether counsel's performance was deficient does "not . . . consider [any] attorney error in isolation, but instead . . . assess[es] how the error fits into the big picture of what happened at trial." *Jackson v. United States*, 956 F.3d 1001, 1006 (8th Cir. 2020) (internal quotation marks and citation omitted); see also *Davis v. United States*, 858 F.3d 529, 534 (8th Cir. 2017) (fair assessment requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time") (internal quotation marks and citation omitted). Judicial scrutiny of counsel's performance is "highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Harrington*, 562 U.S. at 104. Given that there are "countless ways to provide

5

effective assistance in any given case," strategic choices as to how to defend a case are "virtually unchallengeable." *Strickland*, 466 U.S. at 689-90; *see also Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985) ("An ineffective assistance of counsel claim cannot be based on a decision relating to a reasoned choice of trial strategy, even when proved improvident.").

### 2.  Prejudice Prong

Second, Petitioner Wingo must prove actual prejudice. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *accord, Harrington v. Richter*, 562 U.S. 86, 104 (2011). Deprivation of a fair trial means that the Petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted); *see, e.g., Bass v. United States*, 655 F.3d 758, 760 (8th Cir. 2011).

A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted). It is "not enough" to show that counsel's errors had some conceivable effect on the outcome; rather counsel's errors "must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. (quoting *Strickland*, 466 U.S. at 687). Only when the likelihood of a different outcome is "substantial, not just conceivable," has *Strickland*'s demanding standards been met. *Stewart v. Kelley*, 890 F.3d 1124, 1128 (8th Cir. 2018) (quoting *Harrington*).

Importantly, speculation fails to satisfy the prejudice standard. For example, speculation about what witnesses might have said falls short. *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989); *see also Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013). In addition, speculation about what experts might have opined, *Ashker v. Class*, 152 F.3d 863, 876 (8th Cir. 1998), alternative plea offers the government might have made, *Roundtree v. United States*, 751 F.3d 923, 927 (8th Cir. 2014), or whether different cross-examination techniques would have produced a confession do not suffice. *See Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) ("*Strickland* does not require perfect trial performance; it requires only competence.")

### B. The Need for an Evidentiary Hearing

Some ineffective assistance claims may require an evidentiary hearing. *See, e.g. Carnnahan v. United States*, 778 F. App'x 404 (8th Cir. 2019). However, many claims, such as those set forth by Petitioner Wingo, can be decided on the pleadings, particularly where the facts are not in dispute or where the record is fully developed. *See, e.g., Voytik v. United States*, 778 F.2d 1306, 1309 (8th Cir. 1985).

A court has some discretion in determining whether an evidentiary hearing is necessary. *United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986). No hearing is required where the allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *see also Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (evidentiary hearing properly denied where defendant's assertions stated in a conclusory fashion); *Holloway v. United States*, 960 F.2d 1348, 1358

7

(8th Cir. 1992) (a single, self-serving, self-contradicting statement is insufficient to render the motion, files and records of a case inconclusive). Similarly, no hearing is required where a careful review of a fully developed record shows the petitioner is entitled to no relief. *Voytik v. United States*, 778 F.2d 1306, 1309 (8th Cir. 1985); *see also Larson v. United States*, 905 F.2d 218, 221 (8th Cir. 1990) ("There is no requirement that a district court must conduct an evidentiary hearing if the record is sufficient without it."). Where the petitioner's allegations, if proven true, would entitle him to no relief regardless, an evidentiary hearing may be properly denied. *Winters v. United States*, 716 F.3d 1098, 1105 (8th Cir. 2013); *see also Hyles v. United States*, 754 F.3d 530, 534-35 (8th Cir. 2014) (evidentiary hearing properly denied because even if defendant's attorney advised her not to take the plea, defendant would be entitled to no relief under *Strickland*); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (no evidentiary hearing was necessary where the court had before it the hearing transcript and the documentary record).

Wingo's claims of ineffective assistance of counsel do not require an evidentiary hearing as there are facts in dispute that are material to the Court's inquiry under Section 2255. Wingo's claims are insufficient to state a colorable claim for relief, they are conclusory in nature, and are contradicted by the record.

## III.    DISCUSSION

Petitioner Wingo entered a plea of guilty on July 8, 2021. Crim. Case, Doc. 64. The two-part *Strickland* test, as outlined above, applies to challenges to guilty pleas based on ineffective assistance of counsel. *Strickland,* 466 U.S. at 58. Wingo must demonstrate both constitutionally deficient performance and prejudice. The prejudice inquiry "focuses on

8

whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. at 59. In other words, defendant must show a reasonable probability that, "he would not have pleaded guilty and would have insisted on going to trial." *Id*. (footnote omitted); *see also Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) (in the context of a guilty plea, a defendant satisfies the *Strickland* prejudice prong where "there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial") (quoting *Hill*, 474 U.S. at 59);[2] *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

Wingo's claim is belied by the statements in his signed plea petition, and his sworn statements during the plea hearing. In his Guilty Plea Agreement and, under oath, at his plea hearing, Wingo admitted that he knowingly violated Title 18, United States Code, Section 922(g)(1), and further admitted that on August 19, 2019, in the Eastern District of Missouri, he was knowingly in possession of a firearm while aware he was a convicted felon. Crim. Case, Doc. 65, at p. 2-3; Doc. 74, at p. 18-21. Wingo told this Court that he possessed the gun for over a year and a half, and that he was "very remorseful for the gun." Crim. Case, Doc. 74, at p. 28-29. Wingo also stated that he "did possess that gun" and repeatedly apologized to this Court for possessing the gun. Crim. Case, Doc. 74, at p. 28-29). Also, in his Guilty Plea Agreement, Wingo agreed that:

---

[2] In many cases, the prejudice inquiry closely resembles the inquiry courts engage in for ineffective assistance challenges to convictions at trial. *Hill*, 474 U.S. at 59. For example, where the alleged error is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry focuses on whether discovery of the evidence "would have led counsel to change his recommendation as to the plea," which depends "in large part" on whether the evidence "likely would have changed the outcome of a trial." *Id*. Similarly, where a defendant claims counsel failed to advise him of a potential affirmative defense, resolution of the prejudice inquiry "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id*. These are objective inquiries. *Id*. at 60

9

> [Petitioner Wingo] is fully satisfied with the representation received from defense counsel. [Petitioner Wingo] has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which [Petitioner Wingo] has requested relative to the United States' case and any defenses.

Crim. Case, Doc. 65, at p. 10. Wingo acknowledged that his guilty plea was made of his own free will and that he was, in fact, guilty. Crim. Case, Doc. 65, at p. 11; Doc. 74, at p. 12, 21. During his plea hearing on July 8, 2021, Wingo stated under oath to the Court that he was "for the most part" satisfied with the way his lawyer handled his case. Crim. Case, Doc. 74, at p. 7. Wingo further affirmed under oath that defense counsel investigated the case to Wingo's satisfaction. Crim. Case, Doc. 74, at p. 7. Petitioner Wingo advised this Court that he had wanted defense counsel to call a certain police officer and "Tara from Washington University" during the evidentiary hearing on his motion to suppress. Crim. Case, Doc. 74, at p. 8-9.[3] Notwithstanding that, Wingo advised this Court that he was ready to proceed with his guilty plea hearing. Crim. Case, Doc. 74, at p. 10-11. Wingo clarified that he was satisfied with the way defense counsel handed Wingo's case and that he had no gripes or complaints whatsoever. Crim. Case, Doc. 74, at p. 11. Wingo further confirmed that he wanted to give up his right to a jury trial and wanted to plead guilty. Crim. Case, Doc. 74, at p. 12.

The sworn statements made when entering a guilty plea "are accorded a great measure of finality." *Tran v. Lockhart*, 849 F.2d 1064, 1068 (8th Cir. 1988). They

---

[3] Petitioner Wingo's claims of ineffective assistance of counsel do not include any claims related to defense counsel not calling any police officer or "Tara from Washington University" during the evidentiary hearing on his motion to suppress. *See, generally* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, Doc. 1.

10

constitute "a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977*); see United States v. Bahena*, 223 F.3d 797, 806-807 (8th Cir. 2000) (after affirming understanding of each paragraph of plea agreement in court with translator present, defendant's later assertion that he did not understand what was going on "rings hollow"); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (defendant's statements made during plea hearing carry strong presumption of verity); *Pennington v. Housewright*, 666 F.2d 329, 331 (8th Cir. 1981) ("Great weight is to be given to statements made in connection with a guilty plea[.]"). "Solemn declarations in open court carry a strong presumption of verity," and the "subsequent presentation of conclusory allegations unsupported by specifics" is "subject to summary dismissal." *Blackledge*, 431 U.S. at 74., *see also United States v Hughes*, 16 F.3d 949, 951 (8th Cir. 1994) ("[Defendant's] failure toassert any objections to counsel's performance at his change of plea hearing 'refutes any claim of ineffective assistance of counsel as a basis for withdrawing his plea.'" (quoting *United States v. Abdullah*, 947 F. 306, 312 (8th Cir. 1991)) and *Tatum v. United States*, 85 F.3d 633, *1 (8th Cir. 1996) (denying claim that counsel failed to investigate an alibi defense where petitioner testified that he was "satisfied with his counsel's representation" and testified that he was guilty).

Despite his assurances in his Guilty Plea Agreement and, under oath, to this Court that he had no complaint about his defense attorney that are relevant to his claims for relief under his 28 U.S.C. § 2255 Petition, Wingo now raises for the first time four claims of ineffective assistance of counsel. Wingo's claims are bald and conclusory allegations that fail to state a colorable claim for relief. Moreover, each of these claims is refuted by the

11

record and is legally insufficient.

The claims of ineffective assistance of counsel asserted by Wingo are insufficient as they are mere unsupported conclusory allegations. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985); *see also Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel*); United States v. Bryson*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance of counsel). Notwithstanding the liberal construction of Wingo's pro se petition, his bald allegations lack sufficient specificity and support to state a claim for relief. While a pro se litigant is entitled to a liberal construction of his pleadings, this liberal construction will not substitute for the required degree of specificity. *See Saunders v. United States*, 236 F.3d. 950, 953 (8th Cir. 2001). Even a pro se movant must identify facts that support his claims of error. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 75 76 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985); *Burleson v. United States*, 340 F.2d 387, 390 (8th Cir. 1965); *see also* Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings. The Court will address each of Wingo's claims below. His assertions fail to state colorable claims and are unsupported by any factual allegations.Accordingly, Wingo's petition will be dismissed without a hearing.

### A. Defense Counsel's Alleged Failure to Invoke Missouri's Second Amendment Preservation Act

Petitioner Wingo's first claim of ineffective assistance of counsel is premised upon Missouri's Second Amendment Preservation Act, Mo. Rev. Stat. § 1.410-1.485. It seems that Wingo alleges that defense counsel failed to invoke Wingo's rights when the Government violated Wingo's due process and jurisdiction under the Second Amendment Preservation Act, and that defense counsel allowed the State to contravene the Second Amendment Preservation Act. Doc. # 1, at p. 4.

The Second Amendment Preservation Act became law in the State of Missouri on June 12, 2021, and applies to offenses occurring on or after August 28, 2021. Mo. Stat. 1.480(5). Among other things, the Act asserts that certain types of federal laws "shall be considered infringements on the people's right to keep and bear arms" under the Second Amendment and the Missouri Constitution, including any law or regulation that prohibits "the possession, ownership, use, or transfer of a firearm . . . by law-abiding citizens." Mo. Rev. Stat. § 1.420(4). The Act purports to declare that such laws "shall be invalid to this state, shall not be recognized by this state, shall be specifically rejected by this state, and shall not be enforced by this state." Mo. Rev. Stat. § 1.430. The Act further prohibits any "entity or person," including state and local officials, from "enforc[ing] or attempt[ing] to enforce" these federal laws or "[g]iv[ing] aid and material support" to someone who does. Mo. Rev. Stat. § 1.450. The Act imposes "a civil penalty of fifty thousand dollars" per occurrence on any "political subdivision or law enforcement agency" that employs such a person. Mo. Rev. Stat. § 1.460.1. The Act defines the term "law-abiding citizen" to mean

13

"a person who is not otherwise precluded under state law from possessing a firearm…." Mo. Rev. Stat. § 1.480(1).

The Second Amendment Preservation Act has no bearing on Wingo's criminal case, as the Act was non-existent at the time of his crime in 2019. In fact, the Act did not go into full effect until several weeks after Wingo's criminal case was concluded. Wingo has failed to identify any violation of the Act that occurred after its effective date or any conduct by defense counsel that he argues contravened the Act after its effective date.

Furthermore, any protections arguably afforded by the Second Amendment Preservation Act do not apply to Wingo. The Act applies only to law-abiding citizens, which are citizens that are not precluded under Missouri law from possessing a firearm. Mo. Rev. Stat. §§ 1.420(4) and 1.480(1). For the purposes of the Second Amendment Preservation Act, Wingo is not a "law-abiding citizen." As a convicted felon with a prior conviction for a violent offense, Wingo is prohibited from possession a firearm under Missouri law as set forth in Mo. Rev. Stat. § 571.070. *See also State v. Merritt*, 467 S.W.3d 808, 813 (Mo. banc 2015) (confirming that the Missouri criminal law prohibiting convicted felons from possessing firearms did not violate defendant's state constitutional right to bear arms).

Finally, the Act has now been declared unconstitutional on Supremacy Clause grounds. *United States v. Missouri*, 660 F. Supp. 3d 791, 809 (W.D. Mo. 2023), aff'd, 114 F.4th 980 (8th Cir. 2024). Wingo's claims in regard to the Second Amendment Preservation Act are factually and legally insufficient to establish ineffective assistance of counsel and will be denied

14

### B. Defense Counsel's Alleged Failure to Investigate and to Demand Disclosure from the Government of Facts Favorable to Wingo

In his second and fourth claims, Wingo alleges that defense counsel was ineffective in regard to his investigation of the case. Specifically, Wingo alleges that defense counsel was ineffective for failing to call an expert that could establish the "truth" of his arrest. Wingo also claims that defense counsel filed to investigate that he had a warrant from St. Louis County and therefore incorrectly informed the Court that Wingo was not charged with a crime. Lastly, in his fourth claim, Wingo alleges that defense counsel failed to obtain discovery favorable to Wingo. These assertions are wholly unsupported by any facts or are refuted by the record in this case.

#### 1. Petitioner's Claim Regarding an Expert Establishing the "Truth" of His Arrest

Petitioner Wingo alleges that trial counsel was ineffective for failing to call an expert who could establish the "truth" of his arrest and failure to interview an expert that has Wingo's health records. Doc. 1, at p. 12, 21. Wingo fails to state what that expert's testimony would have been. This is a fatal flaw in his claim. A movant's failure to provide the identity and affidavits of the expected testimony of alleged exculpatory witnesses are fatal to claims that an attorney was ineffective. *See Armstrong v. Kemna*, 534 F.3d 857, 867-68 (8th Cir. 2008) (quoting *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) ("Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony . . . would be fatal to an ineffective assistance of counsel claim.") (citations omitted)). Purported testimony that is merely of hypothetical or remote benefit to the defense is insufficient to prove prejudice. *Caban v. United States*,

15

281 F.3d 778, 786 (8th Cir. 2002). A claim of ineffective assistance based on the failure to call an expert requires evidence of what an expert would have stated in order to establish prejudice. *See Rodela-Aguilar v. United States*, 596 F.3d 457, 462 (8th Cir. 2010) (quotation omitted). However, even had he stated a colorable ground for relief, it remains that "a reasoned decision not to call a witness is a virtually unchallengeable decision of trial strategy, in part because there is a considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences." *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010) (quotation omitted). Petitioner Wingo's claim of ineffective assistance of counsel for failure to call an expert is conclusory and devoid of any allegations upon which relief could be granted.

### 2. Petitioner's Claim That Counsel Failed to Inform the Court of State Charges

In his second claim, Petition Wingo alleges that defense counsel was ineffective for failing to investigate that Wingo had a warrant at the time of his sentencing and for notifying the Court of such a warrant during the sentencing hearing. Even assuming, arguendo, that defense counsel had been made aware of a warrant, such an error does not rise to the level of ineffective performance. The test of whether counsel's performance was deficient does "not . . . consider the attorney error in isolation, but instead . . . assess[es] how the error fits into the big picture of what happened at trial." *Jackson v. United States*, 956 F.3d 1001, 1006 (8th Cir. 2020) (internal quotation marks and citation omitted). In this instance, Wingo fails to explain how he was prejudiced by the alleged error regarding a

16

warrant. To state a claim upon which relief could be granted, Wingo "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). In this instance, Wingo can make no claim that the sentence would have been more favorable but for counsel's alleged error.

### 3. Petitioner's Claim Regarding Counsel's Investigation and Requests for Discovery

In his fourth claim, Petitioner Wingo casts a wide net, claiming ineffective assistance of counsel including defense counsel's alleged failure to inspect the officers on scene, failure to seek police notes, police camera footage, and police audio recordings. In keeping with his other claims of ineffective assistance of counsel, this claim is insufficient as Wingo fails to describe any specific item of evidence defense counsel disregarded and further fails to explain how he was prejudiced. Wingo's claims are also refuted by the record as his defense attorney did pursue discovery of much of the material referenced by Wingo. While Wingo is entitled to a liberal construction of his pleadings, this claim "lacks sufficient specificity under even the most liberal pleading requirements," as he fails to identify any specific evidence that his attorney should have presented at sentencing. *See Saunders v. United States*, 236 F.3d. 950, 953 (8th Cir. 2001). Defendant's claims that counsel failed to adequately investigate the facts of the case or to discover and present mitigating facts are reviewed under the two-part *Strickland* test set forth above. Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Kemp*, 924

17

F.3d at 500. However, deference to counsel's decisions means the court reviews "not what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (internal quotations and citations omitted).

"[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Counsel's conduct is not viewed through the lens of hindsight. Though in retrospect a more thorough investigation might have been effective, as long as counsel's investigation decisions were reasonable under the circumstances, failure to discover additional facts is not sufficient to show unreasonable performance. *Kemp*, 924 F.3d at 500-02.

Wingo's allegations amount to mere speculation that evidence existed that his defense attorney failed to produce or explore. In contradiction to Wingo's claims, defense counsel made a thorough and proper motion for discovery in which he requested, among other things, all recorded statements of Wingo, all evidence favorable to Wingo, the rough notes of investigating law enforcement officers, all video or audio recordings form within police vehicles or in police stations, all body camera video or audio recordings. Crim. Case, Doc. 20.

### C. Defense Counsel's Alleged Failure to Oppose the Government Filing its Memorandum in Opposition to Wingo's Motion to Suppress Out of Time

In his third claim, Petitioner Wingo incorrectly claims that defense counsel took it upon himself to allow the Government to file an untimely response to Wingo's motion to

18

suppress. This claim is refuted by the record in the underlying criminal case. The Government's response to Wingo's Motion to Suppress Evidence and Statements was due on July 27, 2020. Crim. Case, Doc. 33. On July 28, 2020, the Government filed its memorandum in opposition to Wingo's motion to suppress accompanied by a motion for leave to file such memorandum out of time. Crim. Case, Doc. 33 and Doc. 34. The Government's motion for leave to file the memorandum one day late did not reference any position of defense counsel, and defense counsel neither objected nor consented to the Government's motion for leave to file its memorandum out of time. Without input from defense counsel and by docket order issued the very next day, the Hon. David D. Noce grated the Government's motion for leave to file the memorandum out of time on July 29, 2020. Crim. Case, Doc. 35.

Even assuming, *arguendo*, that defense counsel had a meaningful opportunity to object to the Government's filing of its response one day late and chose not to object, this would not rise to level of ineffective assistance of counsel. Failure to object under these circumstances is hardly the kind of "fundamental defect which inherently results in a complete miscarriage of justice" for which relief is warranted. *Houser v. United States*, 508 F.2d 509, 513 (8th Cir. 1974). There is no basis to conclude that defense counsel acted ineffectively by failing to immediately object to the Court receiving the Government's filing one day late, nor does Wingo demonstrate any resulting prejudice.

IV.   **SUPPLEMENTAL MOTION**

On July 18, 2024, more than two years after filing his Section 2255 motion on July 7, 2022, Wingo filed an "Amended/Supplemental" Section 2255 motion.  The amended

19

motion is, of course, untimely, nor do the several new claims relate back to the claims in the original motion. Accordingly, the Court will dismiss the amended motion for those reasons.

## VI.   CONCLUSION

For the foregoing reasons, this Court will deny Wingo's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Wingo has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 30th day of December, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE